UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MUD PIE, LLC,  <br><br>      Plaintiff,  <br><br>   v.  <br><br>CLAY CHICK CERAMICS, LLC, and STACY VOLLET.,  <br><br>      Defendants. | CIVIL ACTION NO.  <br><br>1:12-CV-3242-CAP |

**O R D E R**

This copyright case is before the court on the plaintiff's motion for summary judgment [Doc. No. 31] and the defendants' motion for leave to file excess pages [Doc. No. 48]. As an initial matter, the motion for leave to file excess pages [Doc. No. 48] is GRANTED.

## I.  Background

### A. Facts

Defendant Stacy Vollet began designing and selling ceramic works in 1999. In 2008, Vollet and her husband formed Clay Chick Ceramics, LLC. The corporate entity markets Vollet's designs to the wholesale market.

In 2005 or 2006, Vollet designed a reindeer ornament. It is a multi-layered ceramic ornament consisting of a triangular shaped head with an exaggerated red circular nose raised in relief; it has short two-point black

rounded antlers, two closely-situated eyes, no ears, no mouth, and an additional adornment above the right eye and in front of the antler. This ornament was granted Certificate of Registration # VA 1-785-995 with effective date of registration of August 11, 2011.

In 2008, Vollet designed a multi-layered ceramic Santa ornament consisting of a head painted in cartoonish fashion with a wavy beard outlined in symmetrical curves; a mustache is raised in relief above the beard and the eyes are solid black dots. The face has a circular red mouth and does not have eyebrows, or ears; the Santa ornament is topped with a red, polka-dotted hat with a ball that lays off to the right. This ornament was granted Certificate of Registration # VA 1-785-996 with effective date of registration of August 11, 2011.

In 2009, Vollet designed the multi-layered ceramic snowman ornament consisting of a snowman's head wearing a black, stovepipe hat with a green stripe and a raised adornment on the right side of the hat's brim; the face has a curved, carrot-like nose and is painted in a cartoonish fashion with an exaggerated smile drawn from a single black line. This ornament was granted Certificate of Registration # VA 1-785-997 with effective date of registration of August 11, 2011.

Mud Pie, the plaintiff, is a gift company that began selling ceramics in 1986.  It markets a full Christmas line of products. In the summer of 2010, a Mud Pie employee, Ms. McHenry was assigned to design the new line of Christmas items for 2011, called the North Pole collection, utilizing black-and-white coloring, layering, Santa Claus, reindeer, and a snowman.  For the 2012 collection, Mud Pie updated items from the North Pole collection.

In September 2011, Clay Chick demanded that Mud Pie cease sales of the North Pole collection.  Mud Pie responded that the characters challenged by Clay Chick were not protectable.  In the following September, Clay Chick threatened litigation and requested damages after providing Mud Pie with copies of Vollet's copyright registrations.

**B. Procedural History**

In September 2012, the plaintiff filed a declaratory judgment action seeking a judgment declaring that Mud Pie's North Pole collection and its Baby Shoe frame[1] do not infringe on copyrights owned or licensed by Clay

---

[1] In 2006, Vollet created an ornament that consisted of a Mary-Jane style baby shoe with white polka dots and a pink flower.  In August 2011, a Mud Pie employee designed a ceramic picture frame with that includes at the corner a black Mary-Jane style baby shoe with white polka dots.  The picture frame was for Mud Pie's "Perfectly Princess" collection of girls' gift items.  Items from that collection feature black, white, pink, polka-dots, and Mary-Jane style shoes.

Chick.  Additionally, the plaintiff seeks a judgment declaring that the four specific copyrights (for the Santa, snowman, reindeer, and baby shoe) that Clay Chick registered with the U.S. Copyright Office are invalid and unenforceable.

The defendants filed counterclaims alleging infringement of the four copyrights that are the subject of the declaratory action.  The defendants have since removed the infringement claim as to the shoe design, leaving infringement claims of the three Christmas icons.  Mud Pie has filed a motion for summary judgment as to the counterclaims against it.

## II.  Summary Judgment

### A.  Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure authorizes summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156 (1970); *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).  The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an

essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson*, 74 F.3d at 1090. Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In deciding a motion for summary judgment, it is not the court's function to decide issues of material fact but to decide only whether there is such an issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). The applicable substantive law will identify those facts that are material. *Id.* at 247. Facts that in good faith are disputed, but which do not resolve or affect the outcome of the case, will not preclude the entry of summary judgment as those facts are not material. *Id.* Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* "Genuine" factual issues must have a real basis in the record. *See Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (citations omitted).

**B. Analysis**

To establish copyright infringement, two elements must be proven: ownership of a valid copyright, and copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Mud Pie contends that the defendants' copyrights are "thin," that the defendants cannot show that Mud Pie copied original elements of the ornaments, and that the Mud Pie ornaments are not substantially similar to those of the defendants.

Notably, the issue before the court is not whether Mud Pie's designs infringed Clay Chick's copyrighted expressions. Rather, the court must decide whether Mud Pie has established that no properly instructed jury could find that it infringed the defendants' products.

*1. Scope of the Defendants' Copyrights*

The defendants point out that it is undisputed that they have valid copyright registrations on the three Clay Chick ornaments. Nevertheless, Mud Pie is correct in its assertion that "a certificate of registration in a work does not mean that the entire work is copyrightable, nor does it purport to identify which aspects of a work are copyrightable; instead, the certificate

6

merely acknowledges that the work contains 'copyrightable subject matter.'" *Gulfstream Aerospace Corp. v. Camp Sys. Int'l, Inc.*, 428 F. Supp. 2d 1369, 1374–75 (S.D. Ga. 2006) (quoting 17 U.S.C. § 410(a)); *see also Feist*, 499 U.S. 340, 348 ("[T]he mere fact that a work is copyrighted does not mean that every element of the work may be protected").  Copyright law does not protect ideas; rather, it protects only original expression.  *See Feist*, 499 U.S. 340, 349–50.

The Eleventh Circuit has recognized that "noncopyrightable material includes 'scènes à faire'—stock scenes that naturally flow from a common theme." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459–60 (11th Cir. 1994) (citing *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986) (no protection for common elements in police fiction, such as "drunks, prostitutes, vermin and derelict cars" and "foot chases and the morale problems of policemen, not to mention the familiar figure of the Irish cop"), and *Evans v. Wallace Berrie & Co.*, 681 F. Supp. 813, 817 (S.D. Fla. 1986) ("Such similarities as using a sand dollar as currency, foods made of seaweed, seahorses for transportation and plates made of oysters or mother of pearl are not protected similarities of expression, but are more accurately characterizations that naturally follow from the common theme of an underwater civilization.")).

Mud Pie contends that the following examples are stock elements that flow from a Christmas theme and are therefore, not copyrightable:

> Santa Claus: Santa is commonly depicted as a white man with pink cheeks and a white beard and moustache. He is commonly depicted wearing a red hat with a fluffy brim and ball.
>
> Snowman: Snowmen are typically depicted with white round heads, big smiles, and stovepipe hats. In cartoons, they generally have coal eyes, pink cheeks, and often, a carrot nose. Embellishing a snowman's hat with a ribbon band and flower became popular once *Frosty the Snowman* appeared with a large pink flower and ribbon on his hat in the 1969 movie.
>
> Reindeer: Simplistic cartoon reindeer are often depicted as brown triangles with antlers, which replicate the triangular-shaped head of a real reindeer. Reindeer have often been depicted with red noses since 1949, when Gene Autry recorded "Rudolph the Red-Nosed Reindeer," and even more so after the 1964 television special.

It is undisputed that the three ornaments created by Mud Pie and the three ornaments created by Vollet contain all of these stock elements. Therefore, if these stock elements were the sum total of the expressions contained in Clay Chick's three designs, Mud Pie would be entitled to summary judgment. However, as one court stated, there is an "infinite variety of ways to express the idea of Santa." *Kurt S. Adler v. World Bazaars, Inc.*, 897 F.Supp. 92, 95 (S.D.N.Y. 1995). Another court found notable distinctions in two comparable expressions of plush toy snowmen, specifically in their "concept and feel." *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 500 (2d Cir. 1982).

Likewise, it is easy for this court to conclude that there are a myriad of ways that a designer could create ceramic Santas, snowmen, and reindeer that go beyond the stock elements of these well-known figures.  Therefore, the inclusion of scènes à faire in the three Clay Chick ornaments does not entitle Mud Pie to summary judgment.

### 2. Incorporation of Protectable Expression

Next, Mud Pie argues that its ornaments do not incorporate the protectable elements of Clay Chick's products.  In other words, Mud Pie contends that Vollet and Clay Chick cannot demonstrate that Mud Pie copied elements of the works that were original.

"In deciding a motion for summary judgment in a claim involving copyright infringement, the court must decide if the similarities between the works involve similar expressions of ideas, as opposed to the mere articulation of similar general themes." *Beal v. Paramount Pictures*, 806 F.Supp. 963, 966 (N.D. Ga. 1992) citing *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 49 (2d Cir.), cert. denied, 476 U.S. 1159 (1984)).  Mud Pie argues that the commonalities between its products and Clay Chick's ornaments are the result of shared ideas, not shared expression.

In response to the motion for summary judgment, the defendants set forth a list of elements of each ornament that they contend are protectable

9

expressions [Doc. No. 44 at 16 (Santa), 21–22 (snowman), 23–24 (reindeer)]. While it is not necessary for the court to address each element asserted by the defendants in order to decide the current motion, the court holds that a properly instructed jury could find that the following characteristics of the defendants' products are expressions that are protectable:

**Santa:**

- only the head is represented,
- the beard has a rounded, wavy outline,
- the beard is given texture in a relief style,
- the mustache is further raised in a relief style,
- the mouth is solid red and circular, and
- the hat has a green band and ball.

**Snowman:**

- only the head is represented,
- the hat is raised in a relief style,
- the hat is pulled low over the head, and
- the hat has a green band and a decorative piece on the brim that is raised in further relief.

**Reindeer:**

- only the head is represented,
- the nose is raised in relief,
- the antlers are black, two-pointed, and rounded, and
- the eyes are proportionally small and closely situated.

Mud Pie's designs use these same features. For example, all of Mud Pie's designs are the head only of each character. The same features on the ornaments are raised in relief; the hats of Santa and the snowman contain a green element. The reindeer has rounded rather than pointed antlers.

Because the court holds that a properly instructed jury could find that there are protectable elements of expression in the ornaments created by the defendants and that Mud Pie's designs incorporate a significant number of these elements, Mud Pie is not entitled to summary judgment.

### 3. Substantial Similarity

Additionally, Mud Pie contends that there are sufficient differences between its three ornaments and the Clay Chick ornaments such that Clay Chick and Vollet cannot prevail on an infringement claim as a matter of law. Substantial similarity exists "where an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1214 (11th Cir. 2000).

11

In response to the motion for summary judgment, the defendants pointed to the testimony of two individuals who purchase items for resale from both Mud Pie and Clay Chick.  Katherine Held stated that when she saw the Mud Pie designs for Santa, the snowman, and the reindeer she thought, "[T]hey look exactly like Clay Chick's."  Held Dep. at 29 [Doc. No. 49-4].  Likewise, Debra Buffin stated, "When I saw these [Mud Pie designs] in the showroom, the first thing I thought was, that looks like Stacy's [Vollet]."  Buffin Dep. at 21 [Doc. No. 49-6].  Mud Pie argues that this evidence is irrelevant because these "gift industry insiders" are not average lay observers.  This argument cuts against Mud Pie, however.  "Gift industry insiders" would be more likely to notice <u>distinctions</u> between designs given the vast number of products they evaluate on a regular basis.  Nevertheless, Mud Pie has not carried its burden in moving for summary judgment on the issue of substantial similarity.

Mud Pie has additionally cited authority for the proposition that "[e]ven if an alleged copy is based on a copyrighted work, 'a defendant may legitimately avoid infringement by intentionally making sufficient changes in a work which would otherwise be regarded as substantially similar to that of the plaintiff's.'" *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 501 (2d Cir. 1982) (quoting 3 Nimmer on Copyright s 13.03(B), at 13–37 (rev. ed.

1980)).  However, this premise simply goes to the degree of similarity of the works.  The court cannot conclude that the differences between the designs are sufficient to entitle Mud Pie to judgment as a matter of law.

### 4. Independent Creation

Mud Pie argues because there is evidence to show that it independently created its Santa, snowman, and reindeer designs, it is entitled to summary judgment on the infringement claims.  Assuming that the evidence referred to by Mud Pie supports the claim of independent creation, it is insufficient to entitle it to summary judgment.  This is so because it is undisputed that Mud Pie had access to the defendants' products when the North Pole collection was being created.  *See* Mud Pie's Br. in Support of its Mot. for Summary J. at 17 [Doc. No. 31].  It is not the counter-claimants moving for summary judgment on their infringement claims.  Rather, it is Mud Pie, the counter-claim defendant, seeking judgment as a matter of law.  While Mud Pie will be free to argue to a factfinder that its evidence establishes it independently created the designs for the North Pole collection, the existence of this evidence does not entitle Mud Pie to summary judgment.

### III. Conclusion

The defendants' motion for leave to file excess pages [Doc. No. 48] is GRANTED.  The plaintiff's motion for summary judgment [Doc. No. 31] is DENIED.

The parties are ORDERED to file their proposed consolidated pretrial order no later than 30 days from the date of this order.

**SO ORDERED** this 9th day of January, 2014.

>           /s/ Charles A. Pannell, Jr.
>           CHARLES A. PANNELL, JR.
>           United States District Judge